## IN THE COURT OF APPEALS OF TENNESSEE
## AT JACKSON

TENNESSEE BANK & TRUST, )
)
)
    Plaintiff/Counter-Deft./ ) **Shelby Circuit  No. 92451 T.D.**
    Appellee, )
)
VS. ) Appeal No.W1998-00556-COA-R3-CV
)
PARAGON PAINT & EQUIPMENT, )
)
)
    Defendant/Counter-Pltf./ )
    Appellant, )

**FILED**

December 15, 1999

Cecil Crowson, Jr.
Appellate Court Clerk

### APPEAL FROM THE CIRCUIT COURT OF SHELBY COUNTY
### AT MEMPHIS, TENNESSEE
### THE HONORABLE D'ARMY BAILEY, JUDGE

**JOHN S. GOLWEN**
**HALE HEADRICK DEWEY**
**& WOLF, PLLC**
Memphis, Tennessee
Attorney for Appellant

**HENRY C. SHELTON, III**
**KRIVCHER MAGIDS PLC**
Memphis, Tennessee
Attorney for Appellee

**VACATED AND REMANDED**

                              **ALAN E. HIGHERS, J.**

**CONCUR:**

**DAVID R. FARMER, J.**

**HOLLY KIRBY LILLARD, J.**

Paragon Paint & Equipment ("Paragon") has appealed from the trial court's refusal to grant a new trial or set aside the judgment in favor of Tennessee Bank & Trust[1] ("Bank") in this breach of contract case. Based upon the following, we reverse the trial court's decision.

**Facts and Procedural History**

At the time the underlying cause of action arose, Paragon was a Memphis corporation that distributed automotive paint. James Ross was the president and owner of Paragon.

In 1997, the Bank filed a breach of contract case against Paragon in the General Sessions Court at Memphis. The Bank alleged that Paragon has breached a deposit agreement. Paragon counter-claimed against the Bank, alleging that the breach was a result of Bank's failure to follow Paragon's stop-payment order.

Paragon retained Borod & Kramer, P.C., to represent the corporation in the breach of contract case. At that time, the law firm was already representing Mr. Ross in some personal matters. While Bruce Kramer served as primary counsel for Paragon, Elaine Sheng, an associate of the firm, actually represented Paragon in court.

The breach of contract case was tried in General Sessions Court on January 12, 1998. The court found in favor of the Bank on its claim and in favor of Paragon on its counter-claim. After set-off of the two judgments, Paragon was awarded approximately two thousand dollars. The Bank appealed the court's finding to the Circuit Court for the Thirtieth Judicial District at Memphis.

Pursuant to the Bank's appeal, the matter was set for trial in the Circuit Court on May 4, 1998. The case was subsequently continued three times: first to June 4, 1998,

---

[1]Tennessee Bank & Trust Company is now known as Insouth Bank.

then until July 13, 1998, and finally until August 4, 1998. When the case was put on the docket for August, it was labeled "TBTD" meaning it was to be tried or dismissed on that day and that no further continuances would be granted.

During the period between the General Sessions trial and July 21, 1998, a dispute arose between Borod & Kramer and Mr. Ross. The dispute involved the fee charged by the firm for representing Mr. Ross in a personal matter. As a result, Mr. Ross hired new counsel to handle the personal matter. At that time, Ms. Sheng and the firm told Mr. Ross that the firm no longer wanted to represent Paragon in the on-going breach of contract suit. On July 21, 1998, the Circuit Court allowed the firm and Ms. Sheng to withdraw from representing Paragon.

On July 13, 1998, Ms. Sheng allegedly sent the firm's entire file regarding the breach of contract case along with a letter containing the date of trial to Ross via certified mail.[2] According to Mr. Ross, he received neither the file nor the letter until some weeks after the trial date. He did receive a letter via regular mail from Ms. Sheng containing a Notice of Attorney's Lien. The letter, which was dated July 17, 1998, was sent to Mr. Ross's personal residence. Neither the letter nor the notice included the trial date set for August 4, 1998. Another letter, dated July 21, 1998, arrived by certified mail at Ross's personal residence. This letter contained an Order Allowing Withdrawal of Counsel. The letter itself did not include the August trial date, but the trial date was mentioned on the last line of the order. Mr. Ross read the letter but did not read the order other than to note that it permitted Ms. Sheng and the firm to withdraw.

On August 4, 1998, Paragon failed to appear for trial at the Circuit Court. At that time, the court found that Paragon was liable to the Bank for breach of contract damages and that Paragon's counter-claim was without merit. On August 7, 1998, an order was entered pursuant to those findings. Under the order, the Bank had judgment against

---

[2]From the proof offered regarding whether this material was actually sent on this date, we are unable to say conclusively whether or not it constituted notice to Paragon. The firm did provide a copy of the letter which is dated July 13, 1998. However, there is not a date on the certified mail receipt provided. Regardless, there is no proof that Paragon actually received this material until some time after the trial date.

Paragon for $9,263.90. This amount represented both the breach of contract amount and an award of attorney's fees. In addition, Paragon's counter-claim was dismissed with prejudice.

Neither Paragon nor Ross was actually aware that the trial had been set for August 4, 1998. At that time, Paragon had not yet retained new counsel for representation in the suit. Paragon first became aware that trial had occurred when a letter from opposing counsel arrived at the Paragon office on August 10, 1998. The letter contained an unsigned copy of the Order of Judgment entered on August 7, 1998. After receiving the letter, Ross reviewed the letters he had previously received from Ms. Sheng. It was at this time that he first read the contents of the Order Allowing Withdrawal of Counsel and took notice of the trial date.

After obtaining new counsel, Paragon entered a Notice of Appearance on August 14, 1998. At that time, Paragon also filed a Motion to Set Aside the Judgment pursuant to Rule 60 of the Tennessee Rules of Civil Procedure. Subsequently, Paragon filed a Rule 59 Motion for New Trial on September 3, 1998.[3] The court denied both of Paragon's motions in a final order entered on November 4, 1998. Paragon filed a timely notice of appeal.

On appeal, Paragon asserts that the trial court erred by failing to either set aside the judgment or grant a new trial. Paragon argues that its failure to appear on the designated trial date was the result of "mistake, inadvertence, surprise or excusable neglect" caused by the actions of their former counsel. Paragon claims that it lacked notice or knowledge of the trial date and therefore should not be bound by the trial court's judgment.

**Analysis**

As a preliminary matter we find it unnecessary to address Paragon's Motion to Set

---

[3]Paragon filed the second motion after finding that the Circuit Court would not hear motions for an entire month.

4

Aside Judgment pursuant to Rule 60 of the Tennessee Rules of Civil Procedure. A Rule 60 motion is used to provide relief from a final judgment. See TENN. R. CIV. P. 60.02. In this case, Paragon's motion was filed before the judgment became final and is therefore untimely. A Rule 60 motion that is filed and served within thirty days of the entry of a judgment can be considered as a Rule 59 Motion for New Trial. Henson v. Diehl, 674 S.W.2d 307, 310 (Tenn. App. 1984). We find that it is unnecessary to do so in this case because Paragon filed a separate Rule 59 motion.

Paragon's Motion for New Trial pursuant to Rule 59 of the Tennessee Rules of Civil Procedure was timely filed in the trial court. A Rule 59 motion to grant a new trial is used to afford relief from a judgment because of mistake, inadvertence, surprise, or excusable neglect. Campbell v. Archer, 555 S.W.2d 110, 112 (Tenn. 1979). On appeal, this Court's scope of review is limited to whether the trial court abused its discretion by denying the Rule 59 motion. See Travis v. City of Murfreesboro, 686 S.W.2d 68, 70 (Tenn. 1985).

On appeal, Paragon relies heavily on the Tennessee Supreme Court's holding in Campbell v. Archer, 555 S.W.2d 110 (Tenn. 1979). In that case, the Defendant was awarded relief from judgment because of the inaction of his recently withdrawn counsel. Id. at 112-113. The Court found that Defendant's former counsel was at fault in failing to notify either defendant or Defendant's new counsel of the impending trial date. Id. While we find that the Campbell decision is clearly relevant, we recently addressed a more analogous case. See Prince v. Campbell, No. 01A01-9806-CV-00276, 1999 WL 51844 (Tenn. App. Feb. 5, 1999).

In Prince, the defendant was involved in an on-going breach of contract suit with plaintiff. Prince v. Campbell, No. 01A01-9806-CV-00276, 1999 WL 51844 at *1 (Tenn. App. Feb. 5, 1999). Defendant was represented by the same attorney for both the contract suit and in some personal matters. Id. at *1-2. Shortly before the contract suit went to trial, Defendant and his attorney had a disagreement regarding the attorney's representation of Defendant in the personal matters. Id. As a result, the attorney sought and was granted

5

leave to withdraw from representing Defendant one week before the trial date. Id. The attorney sent Defendant a letter along with a proposed copy of the Order to Withdraw that contained the trial date. Id. Defendant did not read the letter or the order. Id.

The case was subsequently tried in the Defendant's absence and judgment was entered for the Plaintiff. Prince v. Campbell, No. 01A01-9806-CV-00276, 1999 WL 51844 at *1-2 (Tenn. App. Feb. 5, 1999). Defendant was unaware that trial had occurred until he received a copy of the judgment. Id. After obtaining new counsel, Defendant filed a Rule 60 motion to set aside the judgment.[4] Id. After the motion was denied, Defendant appealed to this Court. Id. at *2-3. After considering the circumstances of the attorney's withdrawal, the Code of Professional Responsibility,[5] and the general standard set forth in Campbell, we found that the Defendant's failure to appear was the result of mistake, inadvertence, surprise or excusable neglect. Id. at *2-3. Accordingly, we ordered that the judgment should be vacated and Defendant granted a new trial. Id. at *2-3.

We find that the facts presented in this case are very similar to those in Prince. In both cases, the attorneys withdrew shortly before trial, in this case two weeks before the trial date. In both cases, the only notice received by the respective defendants before trial was via a letter containing an order. Again, neither party actually read the contents of the order. No other attempt was made by the attorneys to inform defendants about the trial date despite the relatively short period between the date of withdrawal and the date of trial.

The Bank argues that Prince is inapplicable because of several factors. In particular, the Bank argues that Ross, as president of Paragon, should not be given the same leeway as the Defendant in Prince. The Bank argues that the Defendant in Prince was an individual, and as a lay person could not be expected to understand the contents

---

[4]As in this case, Defendant's Rule 60 motion was premature. The trial court properly considered it a Motion for New Trial pursuant to Rule 59.

[5]This Court considered the application of parts of Rule 8, Rules of the Supreme Court, regarding an attorney's duties when withdrawing from employment. Regardless of the circumstances of withdrawal, an attorney is required to "...give due notice to the client...and minimize the possible effect on the rights of the client..." See Prince v. Campbell, No. 01A01-9806-CV-00276, 1999 WL 51844 at *2-3 (Tenn. App. Feb. 5, 1999).

of the order. The Bank is relying on our statement that "it is at least questionable whether a lay person can understand that in view of the developments the trial would still take place at that time." Prince v. Campbell, No. 01A01-9806-CV-00276, 1999 WL 51844 at *3 (Tenn. App. Feb. 5, 1999). We do not think this distinction is relevant.[6] Despite his status as the president of Paragon, Mr. Ross could still be under the same assumption that the new developments would affect the trial date.

We are unpersuaded by the Bank's attempt to distinguish Prince from this case. From our reading of the facts, the cases are analogous. As in Prince, we find that the circumstances warrant the grant of a new trial pursuant to Rule 59. Paragon's failure to appear at trial was the result of mistake, inadvertence, surprise or excusable neglect. Justice requires that Paragon not be liable for a judgment procured under these circumstances. For this reason, and those set out above, we find that Paragon's Motion for New Trial should have been granted.

**Conclusion**

Based upon the foregoing, the judgment of the trial court is hereby vacated, and the case is remanded to the trial court for such further proceedings as are necessary. Costs of the appeal are assessed one-half to the appellant, Paragon Paint & Equipment, and

---

[6]Ross received the letter dated July 21, 1998, at his personal residence. He read the letter and the caption of the order. The Defendant in Prince did not even open the letter that contained the trial date.

7

one-half to appellee, Tennessee Bank & Trust, for which execution may issue if necessary.


_____
HIGHERS, J.


CONCUR:


_____
FARMER, J.


_____
LILLARD, J.